## SAMUEL A. HOLBROOK *versus* GEORGE LORD.

H. & L. made an assignment, *as partners*, of all their property, for the benefit of their creditors. Among the *private* assets of one of the partners, which went into the hands of the assignee, was a note held by him against his co-partner for a private debt. This was sold by the assignee to the plaintiff. And, notwithstanding there was a clause in the assignment, by which the *creditors* of H. & L. released them from all their liabilities, *it was held*, that this did not release the partners from their liabilities to each other, and that the plaintiff was entitled to recover.

FACTS AGREED. April Term, 1858.

The facts sufficiently appear in the arguments of counsel, and in the opinion of the Court.

*Deblois* and *Jackson*, argued for the defendant.

The case finds, that on the 6th day of August, 1845, the defendant, George Lord, together with one Hyde and one Duren, formed a co-partnership under the firm name of Hyde, Lord & Duren. That afterwards, on the 27th day of September, 1848, said Duren left the firm, which from that time became the firm of Hyde & Lord. That on the 26th day of February, 1850, said Hyde & Lord made an assignment of all their partnership property for the benefit of their creditors. In and by the same assignment, the defendant contends that they both, individually, assigned also all their individual property for the benefit of their creditors, partnership as well as individual.

This assignment was executed, not only by the firm under their partnership name of Hyde & Lord, but also by William Hyde and George Lord, in their individual capacities. Said Hyde was at the time of the execution of this assignment a creditor of the defendant Lord, to the amount then due upon said note, as the holder thereof.

We contend that, by the terms of the deed of assignment, all persons becoming parties thereto, were bound by all the provisions of the instrument; that ·said Hyde & Lord, as a firm, and said George Lord and William Hyde, as individuals,

became parties to said assignment in two capacities, the one as assignors of all their partnership and individual property, for the benefit of their partnership and individual creditors, who should become parties to the assignment; the other as creditors of the partnership estate as well as of the individual estates. Thus, William Hyde, by signing said deed, not only assigned all his property for the benefit of the creditors of the firm and of himself individually, but also, by his signature thereto, became a party to the assignment, as a creditor of the estate of George Lord and of Hyde & Lord, and entitled to his proportional share in the division of said estates according to his claims.

William Hyde thus becoming a creditor of the estate of George Lord, by his signature to said deed of assignment, absolutely and entirely, by the terms of the deed, released and forever discharged said Lord from all debts due him and from all claims for or on account of the same, in consideration of his proportional share in said estate.

The purpose and object of the assignment was to make an equal distribution of the partnership and individual property for the benefit of all the creditors of Hyde & Lord and of William Hyde and George Lord, who should become parties thereto. William Hyde, a creditor of George Lord, having signed said deed of assignment, became thereby a creditor, entitled, with the rest, to the distributive share in the estate. As soon as the signatures were affixed to this instrument, Hyde and Lord were both barred from ever enforcing outside of the assignment claims held by either against the other or against the firm of Hyde & Lord. A different construction defeats the purposes and objects of the instrument. All parts of the instrument are to be taken together, and the obvious intent and meaning of the parties is to govern. The note in question, is a dishonored note, and the present plaintiff purchased the same at a sale of the effects of the bankrupt estate, subject to all the equities.

Upon a fair assignment of all his property, the defendant was entitled to, and received a full and complete discharge

from all the creditors who became parties to the deed, and a construction which would permit one creditor afterwards to sue a note thus discharged and forever released by his own act, would defeat the obvious intent and meaning of the instrument. The assignee was a trustee under the law, for the purpose of carrying out the full intent and object of the instrument. As such, he had no right to consider this note as an asset of the estate of William Hyde. He should have filed it as a claim against the estate of George Lord, and, as such, paid the dividend thereon over to the creditors of Hyde & Lord and William Hyde. He had no right, therefore, to dispose of the same in any event, and a sale thereof, by him, was invalid and passed no title to the plaintiff.

*Barnes*, argued for the plaintiff.

The argument of the defendant's counsel results simply in this, that Hyde, by the form and terms and legal intent of the instrument of assignment, released Lord from the debt, which was evidenced by the note in question.

The question whether he did so release Lord, and discharge the note, is a mixed question of fact and law.

The solution of the case is not to be obtained from the discussion of rules pertaining to bankruptcy or insolvency, because our statutes of assignment are not a bankrupt law, nor a code of insolvent laws.

The case depends upon the mere statutory provisions of our own assignment law, upon the general law of partnership, in some respect, and upon the general law regulating the title to promissory notes.

In bankruptcy, or under insolvent laws, the discharge of the debtor results, as a legal consequence of the proceedings instituted.

But, under our assignment laws, there is no discharge of the debtor, from any given debt, unless the holder of that debt *agrees* to discharge, and expresses that agreement by the definite, voluntary act of signing the deed *for that purpose.*

Any intention or willingness of the creditor to release,

amounts to nothing, unless that intention is expressed in proper form.

*First.*—As to the form and terms of the deed in this case:

From beginning to end, the assignment is by Hyde and Lord, as partners and joint debtors, all in the plural number, all in their collective, joint capacity, assigning in terms their common property, and providing for the assent of their joint creditors.

There are three parties to the deed. The *creditors* are the *third* party. The *assignors* are the *first* party. There is no provision in this deed, to permit or enable one, who is a party of the *first* part, to be also a party to the *third* part.

The instrument is subscribed, it is true, by Hyde and by Lord separately, as well as by their firm name. This was done, doubtless, to satisfy the technical necessity, that such an act of assignment could not be validly executed by a mere partnership signature, made by one of the partners, but must be evidenced by the separate signature and seal (if any seal be necessary,) of each partner.

Immediately after these signatures, and the signature of the assignee, party of the second part, comes the jurat, certifying the oath of each partner to the *foregoing assignment by him subscribed*, and to the schedules annexed, showing that those signatures were understood and intended by them to be made as *assignors*, parties of the first part and exhibiters of schedules, not, in any sense, as creditors or releasors, or as parties of the third part.

The note in controversy has a general blank indorsement by Hyde, the payee, making it, in form, payable to holder. In the absence of evidence as to the time when this indorsement was made, it must be presumed to have been at the time when the title and possession of it passed out of the hands of Hyde into the hands of the assignee, showing that, after the execution of the deed, Hyde treated the note as a subsisting, unreleased security, and that he had not intended to release the maker.

*Second.* — As to the legal intent and effect of the deed in its existing, actual form : —

It passed the property in the note to the assignee, as it had been held by Hyde. The indorsement completed the assignee's title. For, although there are no expressions in the deed denoting, in terms, an assignment of the separate property of the individual partners, yet such separate property, whatever it was, did, in fact, pass by the deed. This results from the requisitions of the statute, and from the general law of partnership, by which partnership creditors have, in a certain event, a resort to the separate assets, so that Hyde, in order to have the benefit of the assignment law as to his partnership debts, must surrender to the assignee his separate estate.

Still, notwithstanding the note, as a separate asset, was thus brought into the assignment, there was nothing in the nature of the case, or in the relations of the parties, which changed its legal character, or qualified its legal validity in the hands of the assignee. The note was not a partnership matter in any way, and did not become such by being drawn into a joint assignment made by the promissor and the payee in their capacity as partners. Before the making of the assignment, it was the property of Hyde, payable absolutely by Lord. After the assignment, it was still as absolutely payable by Lord, although it had become the property of the assignee.

These considerations test the unsoundness of the defendant's argument that Hyde did in fact release this debt; as though, when he made an assignment for the benefit of his creditors, he could, by the very act, impair or destroy or in any manner qualify the value of the assets passed over to his creditors, which is manifestly unreasonable. He could no more release this note than he could a note against a stranger. So far as concerned this note, Lord was, in fact, a stranger.

For whose benefit now does such an asset pass to the assignee, in a case like this ?

Obviously, the theory of the law is, that it passes, primarily, for the benefit of the separate creditors of the person who assigned it. The partnership creditors would have no benefit from it, until after the separate creditors of Hyde were satisfied in full. And whether these separate creditors would have to follow this asset into the partnership assignment, by becoming parties to it, or could obtain the benefit of it otherwise, it is not material now to determine. To them, and them only, it belonged, beneficially, in contemplation of law, until they were satisfied in full, and it was the duty of the assignee to deal with it, and dispose of it in such a manner as to make it most productive for their use.

It turns out, in point of fact, that the proceeds of this note were paid by the assignee to *partnership* creditors. So the case finds. Hence, for *some* purposes, and between *some* parties, it might be inferred that Hyde had no separate creditors.

But this distribution of proceeds was an affair wholly subsequent to the sale of the note, an affair with which the plaintiff had nothing to do, and over which he had no control.

The application of the proceeds of the sale of the note to the partnership debts, now shows that Lord had a direct and material benefit from the sale. His partnership debts have been paid, *pro tanto* with the money paid by the plaintiff for the note. Obvious equity, therefore, forbids that Lord should now repudiate the note, from the sale of which he has derived an immediate personal benefit.

It is not necessary to inquire whether, under our statutes, partners, owing partnership debts, and being also indebted to each other, or one to the other, might or might not be able, by one instrument of assignment, aptly and legally to provide both for releases of their joint debts, and releases from their debts to one another. It is enough that, in the present case, the things requisite to release Lord from this debt have not in fact been done.

Neither has any thing ever been done by Lord, or any one else, to secure to him the benefit of any equity, which, under

any available hypothesis, might be raised in his favor in regard to this note.

If any equities existed, by which he could have protected himself against the sale of this note, they were not such as were manifest to an innocent purchaser, nor was there any thing in the transaction and its antecedent relations to put a stranger on his guard, or on inquiry.

It is true the note was overdue when it was sold. But it was also overdue when it was assigned. The fact of its being overdue was sufficient to put a stranger on his guard against equities existing between the parties to the note when it was made, or arising before its maturity. But there is no pretence that any such equities existed between Lord & Hyde before the assignment. All the equities that could be set up, if any, must have arisen from the act of assignment itself; and of these, the mere non-payment of the note at maturity gave no notice, because it was long overdue at the date of the assignment.

It cannot be maintained that the purchaser of dishonored paper is affected by equities between the original parties, which arose after its dishonor.

No pretence of bad faith on the part of the assignee is urged, or of any intentional misconduct by him, and it appears affirmatively that he dealt with the note according to his legal title. The assignee is to be protected, not less than Lord.

As Lord took no steps to secure his alleged immunity against this note at the time, when, if done at all, it could be done without injustice to any person; as he has permitted the sale to be made without objection or warning; as he has received the entire proceeds of the sale, less the expenses, in the payment of his own debts; as he has not offered, and cannot offer to restore the plaintiff to his former position, he should be held to the just and necessary consequences of his own acts in the making of the note, or his own omissions in not securing his immunity from it, before it became the property of the plaintiff.

The opinion of the Court was delivered by

GOODENOW, J.—This action is founded on a promissory note dated August 1, 1845, made payable to William Hyde, or his order, for the sum of $2622,50, in three years from date, with interest, and signed by defendant. On the back of said note are several indorsements of sums of money received. It is also indorsed by "William Hyde, without recourse."

The consideration for this note was the private debt due from the defendant to William Hyde.

On the 6th of August, 1845, the said Lord and Hyde, with one Duren, formed a co-partnership, under the firm name of Hyde, Lord & Duren. On the 27th of September, 1848, said Duren left said firm, and thenceforward the business was conducted by said Lord and Hyde, under the firm name of Hyde & Lord. Said Hyde and Lord so continued partners, until the 26th of February, 1850, when becoming embarrassed in their business, and unable to pay all their creditors, they, in consequence thereof, made an assignment, under the statute.

John W. Munger, the assignee named in the instrument of assignment, duly accepted the trust.

On the 17th day of February, 1854, said assignee, among other things, sold at public auction the note set forth in the writ, the private property of said Hyde, and the plaintiff then and there purchased the same, he being the highest bidder therefor, for the sum of $485.

In looking at the instrument of assignment, we are not able to come to the conclusion that the said William Hyde executed it in any other capacity than as an assignor. We have no doubt he, as well as Lord, intended to assign not only all their partnership property, but all their private property, to which their creditors were justly entitled. They acted as parties of the *first part*, and not as creditors or parties of the *third part*, named in said instrument. The note in suit was not thereby discharged, but the property in it passed to the assignee, and, by the sale at public auction, from the assignee to the plaintiff.

Upon this view of the case, according to the terms of the agreement of the parties, a default must be entered, and judgment rendered for the plaintiff for the amount due on the note, and for his costs.              *Defendant defaulted.*

TENNEY, C. J., and RICE, HATHAWAY, and DAVIS, J. J., concurred.